IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WELLINGTON SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2:08-CV-00115-WKW-WC |
| D E ENTERPRISES, L.L.C.; J. MICHAEL SHEFFIELD; CASCADES DEVELOPMENT GROUP, L.L.C., | ) ) ) ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT

Comes now the plaintiff Wellington Specialty Insurance Company ("Wellington Specialty") and pursuant to Fed. R. Civ. P. 56(a), moves this Court to enter summary judgment on behalf of the plaintiff / counter-defendant and declare that Wellington Specialty has no duty to defend or indemnify D E Enterprises in the Underlying Lawsuit. As shown below and in the accompanying brief in support of Wellington Specialty's motion, there are no genuine issues of material fact and the plaintiff / counter-defendant is entitled to a judgment as a matter of law.[1]

---

[1]This motion also seeks relief pursuant to Fed. R. Civ. P. 56(b) on D E Enterprises' counterclaim. However, the counterclaim does not assert any cause of action against Wellington Specialty; rather, it appears to simply seek a declaration concerning coverage opposite to that sought by the insurer.

## I.  SUMMARY OF UNDISPUTED FACTS

### A.  UNDERLYING LAWSUIT

1.      J. Michael Sheffield filed a complaint against Cascades Development Group, L.L.C. ("Cascades") that he amended to include D E Enterprises, L.L.C. ("D E Enterprises") as a defendant on or about October 3, 2006.  The complaint and amended complaint, styled J. Michael Sheffield v. Cascades Development Group, L.L.C. and D E Enterprises, L.L.C., were filed in the Circuit Court of Montgomery County, Alabama, and numbered CV 2006-1158 ("Underlying Lawsuit").  (Complaint and Amended Complaint submitted and attached collectively as Exhibit A).

2.      The Underlying Lawsuit is based on the sale of real property by Cascades and D E Enterprises to Mr. Sheffield. (Complaint at ¶ 6-7; Amended Complaint at ¶ 3).[2]  Specifically, Mr. Sheffield claims that on July 9, 2005, he signed the "final draft of the real estate purchase agreement" for the subject property. (Complaint at ¶ 10).  The underlying plaintiff contends that he sent the agreement, along with a down payment, on July 12, 2005, to the underlying defendants' agent; but on July 13, he "received a telephone call from Defendants or Defendants' agent stating that, contrary to the terms of the agreement, the escrow of the down payment

---

[2]The amended complaint at ¶ 3 adopts and incorporates by reference all the allegations and counts from the original complaint but contains no new or additional material assertions or claims.

2

would be held by the Defendants rather than its agent." (Complaint at ¶ 10). Despite accepting the down payment, according to Mr. Sheffield, Cascades and D E Enterprises breached the real estate purchase agreement and "have refused to close the transaction and have notified Plaintiff that they consider the contract to be null, void and of no legal effect." (Complaint at ¶ 11).

3.    Based on these allegations, Plaintiff Sheffield asserts three causes of action against D E Enterprises: (1) breach of contract; (2) negligence; and (3) wantonness.  (Complaint at ¶ 14-20).  There is no specific factual assertion upon which the negligence or wantonness claims are based; rather, for both causes, the underlying plaintiff "realleges" the same allegations on which the breach of contract claim also is based, and just asserts in a conclusory fashion that the defendants "negligently" and "wantonly" injured him. (Complaint at ¶ 17 and 19).

4.    The underlying plaintiff claims that he suffered the following damages: (1) lost money; (2) lost use of money; (3) lost use of real estate; and (4) mental anguish and distress. (Complaint at ¶ 16, 18 and 20).  The plaintiff also claims punitive damages. (Complaint at Relief Paragraphs).

5.    Wellington Specialty currently is providing a legal defense, under a reservation of rights, for D E Enterprises in the Underlying Lawsuit.

6.    Plaintiff Sheffield was deposed in the Underlying Lawsuit on January 24, 2008.  At no point in the deposition did Mr. Sheffield testify about any type of independent duty purportedly owed to him or breached by D E Enterprises as grounds for his claims in the Underlying Lawsuit.  Instead, consistent with his assertions in the complaint, the underlying plaintiff's testimony concerning the basis for his claims against D.E. Enterprises focused exclusively on an alleged breach of contract:

> Q.    What did Cascades or D.E. Enterprises or Tim Evans do to treat you unfairly?
>
> A.    They did not honor a good contract, a valid and binding contract.

(Sheffield Deposition (excerpts submitted and attached as Exhibit B) at 220).

> Q.    ... You are asking for punitive damages against Cascades and D.E. How come you want to punish them?
>
> A.    I feel like they willfully backed out of a good contract and there should be damages for that.

(Sheffield Depo. at 215).

> Q.    I'm just asking you what facts -- I know this is legal talk.  I'm asking you for street talk and layman's talk about what you're saying it is that somebody did wrong.  Who is it?  Who did wrong?
>
> A.    I would say if I had a contract and they decided not to honor it somebody made a decision.

4

(Sheffield Depo. at 212).[3]

## B. INSURANCE POLICY

8.      Wellington Specialty issued a Commercial General Liability Policy ("the Policy") to D E Enterprises. (Policy submitted and attached as Exhibit C). The policy period was from June 26, 2005 to June 26, 2006.

9.      The insuring agreement of the Policy provides as follows:

*__Section I - Coverages__*

*COVERAGE     A     BODILY     INJURY     AND     PROPERTY     DAMAGE LIABILITY*

*1.  Insuring Agreement.*

       *a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . .*

       *b.     This insurance applies to "bodily injury" and "property damage" only if:*

          *(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory" and*

          *(2)     The "bodily injury" or "property damage" occurs during the policy period.*

---

[3]Wellington Specialty is not admitting or conceding the truth of any of Mr. Sheffield's allegations in his deposition or complaint.

5

***

## Section V - Definitions

***

> *13.* *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

10. The Policy also provided the following pertinent exclusions:

*This insurance does not apply to:*

**a.** **Expected or Intended Injury**

> *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . . .*

**b.** **Contractual Liability**

> *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement . . . .*

11. As shown by these facts and the accompanying brief, comparison of Mr. Sheffield's claims with the Policy demonstrates that Wellington Specialty does not owe defense or indemnification coverage to D E Enterprises in the Underlying Lawsuit.

WHEREFORE, in light of the above and the accompanying brief, Wellington Specialty respectfully requests this Court to grant this motion for summary judgment and declare that, as a matter of law, Wellington Specialty owes no duty to defend or indemnify D E Enterprises in the Underlying Lawsuit.

Respectfully submitted on March 24, 2008,

 s/ *Mark M. Hogewood*

Mark M. Hogewood (ASB-7651-E36M)
E-mail: mh@wallacejordan.com

Attorney for Plaintiff Wellington Specialty Insurance Company

**Of Counsel:**
Wallace, Jordan, Ratliff & Brandt, L.L.C.
Post Office Box 530910
Birmingham, Alabama 35253
Voice:       (205) 870-0555
Fax:         (205) 871-7534

7

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WELLINGTON SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2:08-CV-00115-WKW-WC |
| D E ENTERPRISES, L.L.C.; J. MICHAEL SHEFFIELD; CASCADES DEVELOPMENT GROUP, L.L.C., | ) ) ) ) | |
| Defendants. | ) | |

## Certificate of Service

I certify that on March 24, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark Allen Treadwell, III, Esq.
Oliver & Treadwell, LLP
129 West Columbus Street
Dadeville, AL 36853
markallen@olivertreadwell.com

Michael S. Harper, Esq.
P.O. Box 780608
Tallassee, AL 36078
mikeharper@elmore.rr.com

Respectfully submitted,

*s/ Mark M. Hogewood*

Mark M. Hogewood
Wallace, Jordan, Ratliff & Brandt, L.L.C.
Post Office Box 530910
Birmingham, Alabama 35253
Voice:      (205) 870-0555
Fax:        (205) 871-7534
E-mail:  mh@wallacejordan.com

8

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

AT MONTGOMERY, ALABAMA

J. MICHAEL SHEFFIELD,

PLAINTIFF,

VS.                                                    CASE NO. CV-2006-

CASCADES DEVELOPMENT GROUP, L.L.C.,

FICTITIOUS PARTY DEFENDANT A, B AND C,
whether singular or plural, being the person, firm,
association, partnership, limited liability company or
other legal entity that breached the contract or
committed the other acts or omissions set forth
in Plaintiff's complaint, whose name or names are
unknown to the Plaintiff at this time, but will be
substituted by amendment when ascertained,

FICTITIOUS PARTY DEFENDANT D, E AND F,
whether singular or plural, being the person, firm,
association, partnership, limited liability company or
other legal entity who was the agent, servant or
employee of Cascades Development Group, L.L.C.,
and/or Fictitious Party Defendant A, B and C, who
acted on behalf of such parties as set forth in
Plaintiff's complaint and who acted within the
line and scope of such agency, service or
employment, whose name or names are unknown
to the Plaintiff at this time, but will be substituted
by amendment when ascertained

FICTITIOUS PARTY DEFENDANT G, H AND I,
whether singular or plural, being the person, firm,
association, partnership, limited liability company or
other legal entity who was the principal, master or
employer of Cascades, Development Group, L.L.C.

1

**EXHIBIT A**

and/or Fictitious Party Defendant A, B and C,
whose agent(s), servant(s) and/or employee(s)
committed the acts and/or omissions as set forth in
Plaintiff's complaint and who acted within the line
and scope of such agency, service or employment,
whose name or names are unknown to the Plaintiff
at this time, but will be substituted by amendment
when ascertained,

### DEFENDANTS

### COMPLAINT

Comes now the Plaintiff herein, who, for his cause of actions, sets forth the following

facts:

### STATEMENT OF THE PARTIES

1.      Plaintiff J. MICHAEL SHEFFIELD (hereinafter sometimes referred to as

"Sheffield") is an individual over the age of nineteen years, who is a resident of the state of

Georgia.

2.      Defendant CASCADES DEVELOPMENT GROUP, L.L.C. (hereinafter

sometimes referred to as "Cascades") is an Alabama limited liability company which is duly

qualified to do business in the state of Alabama and which does business therein by agent.

2

**EXHIBIT A**

3.      FICTITIOUS PARTY DEFENDANT A, B AND C, whether singular or plural, is the person, firm, association, partnership, limited liability company or other legal entity that breached the contract or committed the other acts or omissions set forth in Plaintiff's complaint, whose name or names are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained.

4.      FICTITIOUS PARTY DEFENDANT D, E AND F, whether singular or plural, is the person, firm, association, partnership, limited liability company or other legal entity who was the agent, servant or employee of Cascades Development Group, L.L.C., and/or Fictitious Party Defendant A, B and C, who acted on behalf of such parties as set forth in Plaintiff's complaint and who acted within the line and scope of such agency, service or employment, whose name or names are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained.

5.      FICTITIOUS PARTY DEFENDANT G, H AND I, whether singular or plural, is the person, firm, association, partnership, limited liability company or other legal entity who was the principal, master or employer of Cascades, Development Group, L.L.C. and/or Fictitious Party Defendant A, B and C, whose agent(s), servant(s) and/or employee(s) committed the acts and/or omissions as set forth in Plaintiff's complaint and who acted within the line and scope of such agency, service or employment, whose name or names are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained.

3

**EXHIBIT A**

## STATEMENT OF FACTS

6.    In May of 2005, Plaintiff began negotiating for the purchase and sale of a parcel of real property located on Lake Martin in Tallapoosa County, Alabama.

7.    The negotiations between Plaintiff and Defendants resulted in the execution of a contract for the sale by Defendants to Plaintiff of a lot, and house to be built thereon, located at Lot 11 of The Cascades.  The purchase price for the real property was set at $236,197.00. Plaintiff paid a down payment of $23,600.00 as required by the contract.  The down payment was to be held in escrow by Defendant's agent, Russell Lands, Inc. until the time of the closing, which was set to be held on or before January 15, 2006 at Defendant's request.

8.    Plaintiff promptly applied for financing for the purchase and obtained a commitment for such financing from Aliant Mortgage Corporation on June 27, 2005, which was in advance of the June 30, 2005 deadline for providing financing set forth in the purchase agreement.

9.    At the time that Plaintiff made his down payment, he was informed by Defendants that the 10% down payment would be held until the closing in January of 2006, with the payment being made to the order of The Cascades, rather than the real estate agent, Russell Lands, Inc., as set forth in the contract.

4

**EXHIBIT A**

10.    The final draft of the real estate purchase agreement was signed by Plaintiff on July 9, 2005. On July 12, 2005, Plaintiff sent the agreement by UPS to Defendants and enclosed the required down payment made payable to Defendant's agent, Russell Lands, Inc. On the following day, Plaintiff received a telephone call from Defendants or Defendants' agent stating that, contrary to the terms of the agreement, the escrow of the down payment would be held by the Defendants rather than its agent.

11.    After accepting Plaintiff's down payment, Defendants have refused to close the transaction and have notified Plaintiff that they consider the contract to be null, void and of no legal effect.

12.    At all times pertinent hereto, Defendants acted through their duly appointed agents, servants and employees, which agents, servants and employees acted within the line and scope of their agency, service or employment, or, in the alternative, Defendants adopted, confirmed and ratified all the actions and omissions of their agents, servants and employees as their own.

13.    Plaintiff claims that he is entitled to compensatory damages which he has suffered and, in addition thereto, that he should recover punitive damages pursuant to Alabama Code, §6-11-20. Plaintiff claims that Defendants consciously or deliberately engaged in oppression, fraud, wantonness or malice with regards to the Plaintiff as those terms are defined by Alabama Code, §6-11-20. Plaintiff further alleges that all Defendants either:

5

**EXHIBIT A**

a.    Knew or should have known of the unfitness of the agent, employee or servant which committed the wrongful conduct and employed him or continued to employ him or use his services without proper instruction and with the disregard of the rights or safety or others;

b.    Authorized the wrongful conduct of their agent, employee or servant;

c.    Ratified the wrongful conduct of their agent, employee or servant; or

d.    The acts of the agent, employee or servant were calculated to or did benefit the Defendants.

## COUNT I

### (BREACH OF CONTRACT)

14.    Plaintiff realleges all of the allegations of the above and foregoing paragraphs and, in addition thereto, alleges that a contract for the sale of the real property that is the subject of this lawsuit existed between Plaintiff and Defendants.

15.    All conditions precedent to performance under the respective contracts by all Defendants has been satisfied. Alternatively, the performance of the conditions precedent have been waived by such Defendants.

16.    As the direct and proximate result of the Defendants' wrongful conduct, Plaintiff has suffered damages in that he has lost money; he has lost the use of money; he has lost the use of the subject real property; and he has suffered mental anguish and emotional distress.

6

**EXHIBIT A**

WHEREFORE, your Plaintiff, I. MICHAEL SHEFFIELD. demands judgment against Defendant CASCADES DEVELOPMENT GROUP, L.L.C., FICTITIOUS PARTY DEFENDANT A, B and C, FICTITIOUS PARTY DEFENDANT D, E and F, and FICTITIOUS PARTY DEFENDANT G, H and I, both jointly and severally, for such compensatory as may be assessed by the jury at the trial of this cause, said amount to be in excess of $10,000.00, plus costs.

## COUNT II

### (NEGLIGENCE)

17.    Plaintiff realleges all of the allegations of the above and foregoing paragraphs, and in addition thereto, allege that Defendants negligently injured or damaged the Plaintiff as otherwise alleged herein above.

18.    As the direct and proximate result of the Defendants' negligent conduct, Plaintiff has suffered damages as outlined herein above. He has lost money. He has lost the use of money. He has suffered mental anguish and emotional distress.

WHEREFORE, your Plaintiff. J. MICHAEL SHEFFIELD, demands judgment against Defendant CASCADES DEVELOPMENT GROUP, L.L.C., FICTITIOUS PARTY DEFENDANT A, B and C, FICTITIOUS PARTY DEFENDANT D, E and F, and FICTITIOUS

7

**EXHIBIT A**

PARTY DEFENDANT G, H and I, both jointly and severally, for such compensatory and

punitive damages as may be assessed by the jury at the trial of this cause, said amount to be in

excess of $10,000.00, plus costs.

## COUNT III

### (WANTONNESS)

19.    Plaintiff realleges all of the allegations of the above and foregoing paragraphs and,

in addition thereto, allege that Defendants wantonly injured or damaged the Plaintiff as otherwise

alleged herein above.

20.    As the direct and proximate result of the Defendants' wanton conduct. Plaintiff

has suffered damages as outlined herein above. He has lost money.   He has lost the use of

money.   He has suffered mental anguish and emotional distress.

WHEREFORE, your Plaintiff, J. MICHAEL SHEFFIELD, demands judgment against

Defendant CASCADES DEVELOPMENT GROUP, L.L.C., FICTITIOUS PARTY

DEFENDANT A, B and C, FICTITIOUS PARTY DEFENDANT D, E and F. and FICTITIOUS

PARTY DEFENDANT G, H and I, both jointly and severally, for such compensatory and

punitive damages as may be assessed by the jury at the trial of this cause, said amount to be in

excess of $10,000.00, plus costs.

8

**EXHIBIT A**

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

AT MONTGOMERY, ALABAMA

J. MICHAEL SHEFFIELD,

PLAINTIFF,

VS.                                                    CASE NO. CV-2006-1158

CASCADES DEVELOPMENT GROUP, L.L.C.,

ET. AL.

DEFENDANTS

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Comes now the Plaintiff herein, who amends his complaint previously filed herein by adding D E Enterprises, L.L.C.. In support thereof, your Plaintiff sets forth the following:

1.   Defendant D E Enterprises, L.L.C. is an Alabama limited liability company duly qualified to do business in the state of Alabama.

2.   Defendant D E Enterprises, L.L.C. is added as a defendant herein in substitution for Fictitious Defendants A, D and/or G.

1

**EXHIBIT A**

3.    Plaintiff realleges against Defendant D E Enterprises, L.L.C. all of the allegations and Counts set forth in Plaintiff's original complaint filed herein, which allegations and Counts are adopted and incorporated by reference herein as if set forth at length.

WHEREFORE, Plaintiff J. MICHAEL SHEFFIELD demands judgment against Defendant D E Enterprises, L.L.C., jointly and severally with the defendants previously named herein, for such compensatory and punitive damages as the jury may assess, such damages to be in excess of $10,000.00, plus interest and costs herein.

MICHAEL S. HARPER,
A PROFESSIONAL CORPORATION

MICHAEL S. HARPER / HAR094
Attorney for Plaintiff

213 Barnett Boulevard
Post Office Box 780608
Tallassee, Alabama 36078
Telephone: 334-283-6855

**PLAINTIFF DEMANDS A TRIAL OF THE ISSUES RAISED HEREIN BY STRUCK JURY.**

OF COUNSEL

2

**EXHIBIT A**

## CERTIFICATE OF SERVICE

I hereby certify that I have this 3rd day of October, 2006, mailed a copy of the foregoing document to John P. Oliver, II, Esquire, 129 West Columbus Street, Dadeville, Alabama 36853, by United States Mail, postage prepaid.

OF COUNSEL

3

**EXHIBIT A**

J. Michael Sheffield

V

Cascades Development Group, LLC

Deposition of *J. Michael Sheffiled*

*Taken on 01/24/08*

*Muir Reporting Group*
*950 22nd St. North, Suite 638*
*Birmingham, Al 35203*

**EXHIBIT B**

```
 1        IN THE CIRCUIT COURT OF
 2        MONTGOMERY COUNTY, ALABAMA
 3
 4  J. MICHAEL SHEFFIELD, )
 5                        )
 6     Plaintiff,         )
 7                        )Civil Action No.
 8  vs.                   )CV 2006-1158
 9                        )
10  CASCADES DEVELOPMENT  )
11  GROUP, LLC., and D.E. )
12  ENTERPRISES, LLC.,    )
13  et al.,               )
14                        )
15     Defendants.        )
16
17           DEPOSITION OF
18        J. MICHAEL SHEFFIELD
19
20        IT IS STIPULATED AND AGREED, by
21  and between the parties through their
22  respective counsel, that the deposition
23  of J. MICHAEL SHEFFIELD may be taken
```

```
                                       2
 1  before Mark D. Muir, ALCCR#28,
 2  Commissioner, Notary Public, State at
 3  Large, at the law offices of Oliver &
 4  Treadwell, LLP, 129 West Columbus
 5  Street, Dadeville, Alabama 36853, on
 6  the 24th day of January, 2008,
 7  beginning at approximately 10:00 a.m.
 8        IT IS FURTHER STIPULATED AND
 9  AGREED that the reading of and
10  signature to the deposition by the
11  witness is waived, the deposition to
12  have the same force and effect as if
13  full compliance had been had with all
14  laws and rules of Court relating to the
15  taking of depositions.
16        IT IS FURTHER STIPULATED AND
17  AGREED that it shall not be necessary
18  for any objections to be made by
19  counsel to any questions, except as to
20  form or leading questions, and that
21  counsel for the parties may make
22  objections and assign grounds at the
23  time of the trial, or at the time said
```

```
 1  deposition is offered in evidence, or
 2  prior thereto.
 3        IT IS FURTHER STIPULATED AND
 4  AGREED that notice of filing of the
 5  deposition by the Commissioner is
 6  waived.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
```

```
                                       4
 1              I N D E X
 2
 3  EXAMINATION BY:              PAGE:
 4    Mr. Coleman...............  8 - 202
 5            ............... 230 - 248
 6    Mr. Treadwell............. 202 - 230
 7            ............. 248 - 248
 8
 9
10
11          E X H I B I T S
12
13  FOR THE DEFENDANT:          PAGE:
14  No. 1  Contract.................. 96
15  No. 2  Check and Deposit Slip.... 111
16  No. 3  Business Card............. 123
17  No. 4  Approval Letter........... 133
18  No. 5  Reynolds Letter........... 146
19  No. 6  7/8/05 Letter............. 153
20  No. 7  7/21/05 Letter............ 157
21  No. 8  7/27/05 Letter............ 164
22  No. 9  8/25/05 Letter............ 167
23
```

**EXHIBIT B**

1 agreement when you were dealing with
2 Aliant about the pre-approval,
3 pre-certification -- call it what you
4 want to, it is what it is, I don't care
5 about it. Did you think you had a deal
6 with them?
7    A.   I felt like I had a good
8 contract.
9    Q.   And we know that all of that
10 was back in June 21st, 22nd, based on
11 these pieces of papers that Scott Blake
12 and whoever at Aliant faxed whatever
13 that is, so you knew at least by that
14 time that it was going to require a ten
15 percent earnest money check?
16    A.   No, I did not have a signed
17 contract together at that point in
18 time. It had, again, been discussed,
19 yes.
20    Q.   Okay. So at least through the
21 month of June, sometime during the
22 month of June, you knew that this was
23 going to require ten percent of the

1    A.   Sure.
2    Q.   Why?
3    A.   That was just a lot of money.
4    Q.   In your lawsuit, and I know Mr.
5 Harper wrote this, I know that. You
6 have alleged and you say that Cascades,
7 the defendants -- I'll just say the
8 defendants, knew or should have known
9 of the unfitness of the agent, employee
10 or servant which committed the wrongful
11 conduct and employed him or continued
12 to employ him and continued to use his
13 services without proper instruction and
14 with disregard of the rights or safety
15 of others.
16       Do you know in your lawsuit who
17 you're referring to as the agent or
18 employee who committed wrongful
19 conduct?
20    A.   I can't comment on that.
21    Q.   I'm just asking do you know? I
22 guess what I'm asking --
23    A.   I don't understand that wording

210

1 purchase price for an earnest money
2 deposit?
3    A.   No, I'm not going to agree with
4 that.
5    Q.   You don't agree with that?
6    A.   No.
7    Q.   Okay. Now you said that there
8 were a few phone calls or some
9 communications between you and Amanda
10 Scroggins between the time that you
11 faxed the offer back and before you
12 got, based on your testimony, the
13 original document to sign and send back
14 with a check?
15    A.   Correct.
16    Q.   Is it during those
17 conversations that Amanda is telling
18 you that Tim, D.E. Enterprises,
19 Cascades will require ten percent?
20    A.   That is when she was telling me
21 that that would be a requirement.
22    Q.   Did you have any hesitation
23 about doing that?

212

1 in the contract so, I mean, I -- or in
2 the suit.
3    Q.   I'm just asking you what
4 facts -- I know this is legal talk.
5 I'm asking you for street talk and
6 layman's talk about what you're saying
7 it is that somebody did wrong. Who is
8 it? Who did wrong?
9    A.   I would say if I had a contract
10 and they decided not to honor it
11 somebody made a decision.
12    Q.   And I'm trying to determine are
13 you saying that Amanda Scroggins did
14 something wrong or are you saying
15 somebody -- Tim Evans or somebody?
16    A.   I'm not so sure that's not an
17 unnamed person at this point in time to
18 be named at a future date.
19    Q.   Russell Lands could have messed
20 this thing up; couldn't they?
21    A.   I think that's what we're
22 trying to discover; isn't it?
23    Q.   Do you think Russell Lands did

1  anything wrong in this?
2  A.  I -- you know --
3  Q.  Well, if you do just say so.
4  A.  I don't know.  I haven't sued
5  Russell Lands.
6  Q.  I know that.  I know you
7  haven't, but do you think they did
8  anything wrong?
9  A.  I guess we'll find out.
10 Q.  What information do you need to
11 determine whether or not Russell Lands
12 did something wrong?
13    MR. HARPER:  His lawyer will be
14 able to conduct further discovery.
15 Q.  Anything else other than what
16 your lawyer has told you?
17 A.  I don't know.  He's the dog.
18 Q.  Okay.  And I guess my question
19 is:  Is there anything, any facts that
20 you have now, that Amanda Scroggins did
21 something wrong ever since we started
22 these depositions yesterday?
23 A.  I don't -- I don't know that I

215

1  Q.  -- the $23,600, prior to
2  getting that from -- that piece of
3  paper, the original contract -- based
4  on what you told me, the piece of
5  paper, the original contract, on or
6  about July 9 is it fair to say you knew
7  you were going to have to pay the
8  $23,600, ten percent?  You knew before
9  you got it that you were going to have
10 to do that; correct?
11 A.  I knew if I agreed to the final
12 contract I would have to write a check
13 for ten percent at this point in time
14 as I agreed to it.
15 Q.  Again this is lawyer talk but I
16 want to ask you your layman's response
17 to this.  You are asking for punitive
18 damages against Cascades and D.E.  How
19 come you want to punish them?
20 A.  I feel like they willfully
21 backed out of a good contract and there
22 should be damages for that.
23 Q.  How do you want to punish them?

214

1  have any evidence at this point in
2  time.
3  Q.  But it's your testimony that
4  from when you first initialed and
5  signed the contract, the offer, and
6  faxed it back to Amanda that you didn't
7  get another piece of paper from anybody
8  until the July 9 date that you say on
9  your birthday that you actually signed
10 and then promptly returned that signed
11 document.
12 A.  That is my recollection.
13 Q.  Do you have any evidence or any
14 facts that support or in opposition to
15 Mr. Evans' deposition yesterday when he
16 said he returned it -- put the $23,600
17 on there prior to June 1?
18 A.  I don't have any evidence of
19 anything of what says Tim says or
20 didn't say in his own presence.
21 Q.  In terms of sending the
22 check --
23 A.  Yes, sir.

216

1  A.  I just said I feel like this
2  should be damages for somebody who
3  wantonly and willfully backs out of a
4  good contract.
5  Q.  You have alleged also that you
6  have suffered mental anguish and
7  emotional distress.  Tell me about
8  that.
9  A.  Well, I think that's sort of an
10 objective thing that I feel like I have
11 suffered some mental anguish and
12 distress as a result of this.
13 Q.  Would you mind telling me your
14 objective thoughts that you're going to
15 tell the jury about that they ought to
16 compensate you for being upset?
17 A.  I don't know that I can do that
18 right at this point.
19 Q.  See the thing about it, Mr.
20 Sheffield, is this is probably going to
21 be the only time I get to ask you.
22 A.  I understand.
23 Q.  If I had to hear it the first

Condensed and Concordance

**EXHIBIT B**

219

1  time in front of a jury that might not
2  be so fair and so I need for you to
3  tell us if you can what it is that
4  you're going to tell the jury about how
5  this upset you?
6  A.  I don't know.  I haven't -- I
7  haven't sat down to organize those
8  thoughts frankly.  It's been -- I have
9  been waiting for an opportunity for
10 almost three years here and --
11 Q.  Do you think after the two and
12 a half going on three years of since
13 this whole thing went down that that's
14 not been adequate time to determine
15 what you're going to tell the jury
16 about how you have been upset?
17 A.  I have not thought about it.
18 Q.  Well, if you haven't thought
19 about it maybe you weren't too upset?
20 A.  Well, that's -- that's your --
21 Q.  I'm just asking you, were you
22 really that upset?
23 A.  Yes.

218

1  Q.  Well, did you have to see a
2  psychiatrist or psychologist --
3  A.  No.
4  Q.  -- or a doctor, talk to a
5  preacher or a counselor or a therapist
6  about it?
7  A.  No, I have not.
8  Q.  Did you have to take any
9  medication because you were upset?
10 A.  No.
11 Q.  Did you lose any sleep over it?
12 A.  Yes.
13 Q.  Did you have to -- did you
14 suffer any type of inability to go to
15 work and function because of your loss
16 of sleep?
17 A.  No.
18 Q.  Did it cause any problems
19 between you and your wife or you and
20 your family?
21 A.  Yes.
22 Q.  Tell me about that.  What
23 happened?

219

1  A.  She was just very disappointed
2  this didn't work out.
3  Q.  Also emotional distress, any
4  type of problems emotionally as a
5  result of all of this?  Did you cry
6  about this, were you upset to the point
7  to cry about it?
8  A.  No, I did not cry about it.
9  Q.  This was basically a business
10 deal; wasn't it?  You have been in
11 business for a long time; haven't you?
12 A.  I've been in business, yes.
13 Q.  And you have been involved in
14 different business deals that didn't
15 work out; right?
16 A.  Yes, I have.
17 Q.  And this is one of those
18 business deals that didn't work out?
19 A.  That's -- no, I don't know that
20 I would agree with it in the context
21 you just worded it.  It is -- it did
22 not work out.
23 Q.  Okay.  But in any event you

220

1  are -- I guess I will just ask it this
2  way:  How much are you going to ask the
3  jury to compensate you for for being
4  upset?
5  A.  I don't know.
6  Q.  How many sleepless nights did
7  you have?
8  A.  I can't recall.
9  Q.  Are you still upset about it?
10 A.  Yes, I'm still pretty put out
11 about it.
12 Q.  Why?
13 A.  I just feel like I wasn't
14 treated fairly.
15 Q.  Were you treated fairly by Mr.
16 Peck in the deal that you did with him?
17 A.  Yes, I was.
18 Q.  What did Cascades or D.E.
19 Enterprises or Tim Evans do to treat
20 you unfairly?
21 A.  They did not honor a good
22 contract, a valid and binding contract.
23 Q.  And that presupposes at least



**Wellington Specialty Insurance Company**

P.O. Box 9009
Scottsdale, Arizona 85252

## COMMERCIAL INSURANCE POLICY

Issued to: **DE ENTERPRISES, LLC.**                                        **0100300015**

In witness whereof, Wellington Specialty Insurance Company has caused this policy to be signed by its President at Dover, Delaware, and countersigned on the Declaration page by a duly Authorized Representative of the Company.

_____
Corporate Secretary

_____
President

RECEIVED

AUG 1 5 2005

WSIC

1-1-0-0904

**EXHIBIT C**




# COMMERCIAL POLICY DECLARATIONS
## Wellington Specialty
## Insurance Company
P.O. Box 9009
Scottsdale, Arizona 85252

**Named Insured and P.O. Address:**
**DE ENTERPRISES, LLC.**

P.O. BOX 2398

AUBURN                    , AL    36831

**Policy Number:**
**0100300015**

**Renewal Of Number:**

**Agent and P.O. Address:**

**ASHLAND GENERAL AGENCY, INC.**
**P.O. BOX 850609**
**MOBILE**                            **, AL  36685**
**Policy Period:  From: 06/26/2005      To: 06/26/2006**   12:01 A.M., Standard Time at the address of
the Named Insured as stated.

**Agent Code:  01003**

In return for the payment of the premium, and subject to all the terms and conditions of this policy,
you understand and agree that we are providing the insurance as stated in this policy.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

Commercial General Liability Coverage Part ............................................................................ $
Liquor Liability Coverage Part ...................................................................................................
Building and Personal Property Coverage Part.........................................................................
Farm and Ranch Coverage Part ...............................................................................................
Commercial Inland Marine Coverage Part.................................................................................
...............................................................................
...............................................................................

Total Premium...........................................................................................................................
S.L. TAX
State Tax....................................................................................................................................
Other Tax...................................................................................................................................
Stamping Fee ............................................................................................................................
Policy Fee..................................................................................................................................
Total Advanced Premium...........................................................................................................

Endorsements: See SCHEDULE OF COMMERCIAL POLICY FORMS AND ENDORSEMENTS included in this
policy.

Named Insured is (check one):  ☐ Individual                     ☐ Partnership or Joint Venture
                                 ☒ Limited Liability Company      ☐ Other

Agency At: MOBILE, AL
RJ/SW     201

"This contract is registered
and delivered as a surplus
line coverage under the
Alabama    Surplus    Line
Insurance Law."
          LICENSE #A072608

_Orville Shirley_                    08/12/2005
Authorized Representative            Date

1-1-1-0904

HOME OFFICE

**EXHIBIT C**



**Wellington
Specialty**
Insurance Company

**ENDORSEMENT**

| POLICY NUMBER | EFFECTIVE DATE AND TIME | INSURED |
|---|---|---|
|  |  |  |

(The above information is required only when this form is added after the policy is issued.)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| 1-1-0-0904 | Policy Jacket |
| 1-1-1-0904 | Common Policy Declarations |
| 1-1-2-0904 | Schedule of Forms and Endorsements |
| 1-1-3-0904 | Notices to Policyholder |
| 1-1-4-0405 | Organic Pathogen Exclusion |
| 1-1-6-0904 | Service of Suit |
| IL0017 1198 | Common Policy Conditions |
| IL0021 0498 | Nuclear Energy Liability Exclusion Endorsement |
| 1-2-1-0904 | General Liability Coverage Part Declarations |
| 1-2-3-0705 | Additional Exclusions and Provisions Liability Insurance |
| 1-2-4-0904 | Liability Deductible |
| 1-2-23-0904 | Subcontractors Warranty |
| 1-2-38-0405 | Contractors Coverage Limitations |
| CG0001 1001 | Commercial General Liability Coverage Form |
| CG0062 1202 | War Liability Exclusion |
| CG2010_1001 | Additional Insured - Owners, Lessees or Contractors - Scheduled P |
| CG2139_1093 | Contractual Liability Limitation |
| CG2149 0999 | Total Pollution Exclusion Endorsement |
| CG2175_1202 | Exclusion of Certified Acts of Terrorism And Other Acts of Terror |
| CG2279_0798 | Exclusion - Contractors - Professional Liability |

1-1-2(0904)

HOME OFFICE

Page 1 of 2

**EXHIBIT C**



**Wellington Specialty** Insurance Company

**ENDORSEMENT**

| POLICY NUMBER | EFFECTIVE DATE AND TIME | INSURED |
|---|---|---|
|  |  |  |

**(The above information is required only when this form is added after the policy is issued.)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NOTICES TO POLICYHOLDER

**IMPORTANT NOTICES TO POLICYHOLDER: (Please read carefully)**

A. Any misrepresentation or any concealment or fraud on the part of the Insured which misrepresentation, concealment or fraud affects either the acceptance of the risk or the hazard assumed by the Company shall render this policy void.

B. Notice of all accidents or occurrences must immediately be given to Wellington Specialty Insurance Company whether or not such accidents or occurrences appear likely to involve this policy.

C. The company reserves the right to audit any and all portions of the insurance policy.

**All other Terms and Conditions of this Policy remain unchanged.**

1-1-3-0904

_____
Authorized              Date
Representative

**EXHIBIT C**



**Wellington Specialty** Insurance Company

**ENDORSEMENT**

| POLICY NUMBER | EFFECTIVE DATE AND TIME | INSURED |
|---|---|---|
| | | |

**(The above information is required only when this form is added after the policy is issued.)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ORGANIC PATHOGEN EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
FARM LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM

**ORGANIC PATHOGEN EXCLUSION – LIABILITY INSURANCE**

This insurance does not apply to:

1.      "Bodily injury" or "property damage" which would not have occurred in whole or in part but or the actual, alleged or threatened inhalation, ingestion, contact with, exposure to, discharge, dispersal, presence, seepage, migration, release or escape of any "organic pathogen".

2.      Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove,  contain, treat, detoxify or neutralize, or in any way respond to, or assess the presence and/or effects of any "organic pathogen".

    (b) Action, claim or "suit" by on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the presence and/or effects of any "organic pathogen".

"Organic pathogen" means any bacteria, virus, fungi, mold, mildew, mycotoxins, or their spores, odors or byproducts.

1-1-4-0405

**EXHIBIT C**

**ORGANIC PATHOGEN EXCLUSION – PROPERTY INSURANCE**

There is no coverage under this policy, regardless of initial cause of loss, for:

1.  Physical loss of or damage to Covered Property arising out of, resulting from, caused by or contributed to by any "organic pathogen".

2.  Any Debris Removal, Preservation of Property, Fire Department Service Charge, or Pollutant Clean Up and Removal, arising out of, resulting from, caused by or contributed to by any "organic pathogen".

3.  Any loss of Business Income arising out of, resulting from, caused by or contributed to by:

    (a)  Any "organic pathogen".

    (b)  Any damage to Covered Property arising out of, resulting from, caused by or contributed to by any "organic pathogen".

4.  The cost of testing, assessment, diagnosis, abatement, mitigation, removal or disposal of any "organic pathogen".

"Organic pathogen" means any bacteria, virus, fungi, mold, mildew, mycotoxins, or their spores, odors or byproducts.

**All other Terms and Conditions of this Policy remain unchanged.**

1-1-4-0405

Authorized          Date
Representative

**EXHIBIT C**



**Wellington**
**Specialty**
Insurance Company

**ENDORSEMENT**

| POLICY NUMBER | EFFECTIVE DATE AND TIME | INSURED |
|---|---|---|
| 0100300015 | 06/26/2005 | DE ENTERPRISES, LLC. |

(The above information is required only when this form is added after the policy is issued.)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SERVICE OF SUIT

Service of suit against us may be made upon our designated agent for purposes of service of process:

William T. Kiesler
Wellington Specialty Insurance Company
4250 N. Drinkwater Ste. 210
Scottsdale, Arizona 85251

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other office specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder rising out of this contract of insurance.

In the States of California and Illinois, it is further agreed that service of process may be made upon the person or persons named below:

All other Terms and Conditions of this Policy remain unchanged.

1-1-6-0904

| Authorized Representative | Date |
|---|---|

**EXHIBIT C**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

**EXHIBIT C**

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

**EXHIBIT C**

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

    Copyright, Insurance Services Office, Inc.,  1997    IL 00 21 04 98    □

**EXHIBIT C**



**Wellington
Specialty**
Insurance Company

## COVERAGE PART DECLARATIONS

| POLICY NUMBER | EFFECTIVE DATE AND TIME | INSURED |
|---|---|---|
| 0100300015 | 06/26/2005 | DE ENTERPRISES, LLC. |

**(The above information is required only when this form is added after the policy is issued.)**

## COMMERCIAL GENERAL LIABILITY

☐ "X" if Supplemental Declarations is attached.

### LIMITS OF INSURANCE

General Aggregate Limit (Other Than Products-Completed Operations)
Products-Completed Operations Aggregate Limit
Personal and Advertising Injury Limit
Each Occurrence Limit
Fire Damage Limit                                                    Any One Fire
Medical Expense Limit                                                Any One Person

Location(s) (Including Zip Code(s)) of All Premises you Own, Rent or Occupy (Enter "Same" if same location as your mailing address):
7051 HWY 49 SOUTH                    DADEVILLE              AL  36853

### PREMIUM

| Classification | Code Number | Premium Basis | Exposure | Rate (Premises)/ Rate (Prod/Comp Ops) | Advance Premium | |
|---|---|---|---|---|---|---|
| CONTRACTOR-EXEC. | 91580 | P | | 175 INCLUDED | INCLUDED | MP |
| CARPENTRY | 91342 | P | | 44 11 | | MP MP |
| SUBCONTRACTORS | 91583 | C | | 5 4 | | MP MP |
| ADDITIONAL INSURED | | | | | | |

| | | a) Area    c) Cost p) Payroll  m)Admissions s) Sales   u) Units | |
|---|---|---|---|
| | | **Total Advance Premium** | |

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), FORMS AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

**All other Terms and Conditions of this Policy remain unchanged.**

1-2-1-0904

| Authorized Representative | Date |
|---|---|

**EXHIBIT C**



**Wellington
Specialty**
Insurance Company

**ENDORSEMENT**

| POLICY NUMBER | EFFECTIVE DATE AND TIME | INSURED |
|---|---|---|
| 0100300015 | 06/26/2005 | DE ENTERPRISES, LLC. |

(The above information is required only when this form is added after the policy is issued.)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDITIONAL EXCLUSIONS AND PROVISIONS
### LIABILITY INSURANCE

In consideration of the premium charged, it is understood and agreed that the following shall apply to this policy:

### LEAD, ASBESTOS AND SILICA EXCLUSION

"Bodily injury", "personal injury" or "property damage" arising out of the manufacture, sale, lease, distribution, storage, handling, installation, repair, removal, testing, inspection, disposal or other use of, exposure to, or contact with any goods, products, materials, plant life, or structures containing lead, asbestos or silica in any form including, without limitation, claims arising out of continuous, intermittent or repeated exposure to and/or ingestion, inhalation or absorption of lead, asbestos or silica in any form. This exclusion applies regardless of whether the "bodily injury", "personal injury" or "property damage" results from inhaling, eating, drinking, physical contact with or any other exposure to lead, asbestos or silica in any form.

### SUBSIDENCE OF LAND EXCLUSION

This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, whether arising from natural causes or resulting from operations of the Named Insured or any other subcontractor of the Named Insured.

### PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

This policy does not apply to claim or indemnification for punitive or exemplary damages. If a suit is brought against the Insured for a claim falling within the coverage provided by the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. The Company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

### ASSAULT AND BATTERY EXCLUSION

This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, including the failure to warn, train or supervise, whether caused by or at the instigation or direction of the Insured, his employees, patrons or any other person.

1-2-3-0705

**EXHIBIT C**



**Wellington
Specialty**
Insurance Company

**ENDORSEMENT**

| POLICY NUMBER | EFFECTIVE DATE AND TIME | INSURED |
|---|---|---|
| 0100300015 | 06/26/2005 | DE ENTERPRISES, LLC. |

(The above information is required only when this form is added after the policy is issued.)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### LIABILITY DEDUCTIBLE
(Including Costs and Expenses)

| Coverage | Amount of Deductible |
|---|---|
| Bodily Injury Liability | per "claim" |
| Property Damage Liability | per "claim" |

A.  The Company's obligations under the coverages afforded by this policy to pay damages on behalf of the Insured apply only to the amount of damages in excess of the deductible amount stated above.

B.  The deductible amount stated shall also apply towards investigation, adjustment and legal expenses incurred in the handling and investigation of each claim, whether or not payment is made to claimant, compromise settlement is reached or claim is denied.

C.  The terms of the policy, including those with respect to the Company's rights and duties with respect to the defense of suits and the Insured's duties in the event of an occurrence apply irrespective of the application of the deductible amount.

D.  The Company, at its sole election and option, may either:

  1.  Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company; or

  2.  Simultaneously upon receipt of notice of any claim or at any time thereafter, call upon the Insured and request said Insured to pay over and deposit with the Company all or any part of the deductible amount, to be held and applied by the Company as herein provided.

All other Terms and Conditions of this Policy remain unchanged.

1-2-4-0904

Authorized
Representative

Date

HOME OFFICE

**EXHIBIT C**



**Wellington Specialty** Insurance Company

**ENDORSEMENT**

| POLICY NUMBER | EFFECTIVE DATE AND TIME | INSURED |
|---|---|---|
| | | |

**(The above information is required only when this form is added after the policy is issued.)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SUBCONTRACTORS WARRANTY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is understood and agreed that conditions for coverage under this policy are:

**A.** Certificates of Insurance with limits of liability equal to or greater than those provided by this policy will be obtained from all subcontractors prior to commencement of any work performed for the Insured.

**B.** If Certificates of Insurance are not obtained by the Insured from the subcontractors the cost of subcontracted work will be deemed as payroll on audit and charged accordingly.

**All other Terms and Conditions of this Policy remain unchanged.**

1-2-23-0904

Authorized Representative

Date

**EXHIBIT C**

**Wellington**
**Specialty**
Insurance Company

**ENDORSEMENT**

| POLICY NUMBER | EFFECTIVE DATE AND TIME | INSURED |
|---|---|---|
|  |  |  |

**(The above information is required only when this form is added after the policy is issued.)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS COVERAGE LIMITATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,  2. Exclusions, e.** is deleted and replaced as follows:

This insurance does not apply to:

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee", "temporary worker", or independent contractor of any insured arising out of and in the course of:

**(a)** Employment by any insured; or

**(b)** Performing duties related to the conduct of any insured's business; or

**(2)** A fellow "employee", "temporary worker" or independent contractor of any insured arising out of and in the course of such employment when the insured is an "executive officer" of such employer; or

**(3)** The spouse, child, parent, brother or sister of that "employee", "temporary worker", or independent contractor as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether an insured may be liable as an employer or in any other capacity;

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

**(3)** To any liability assumed under any contract or agreement.

B. **SECTION V – DEFINITIONS**, subparagraph **19.** is deleted and replaced with the following:

**19.** "Temporary worker" means any person who is:

**a.** furnished to you to substitute for a permanent "employee";

**b.** a short-term worker; or

**c.** not an "employee" or "volunteer worker".

**All other Terms and Conditions of this Policy remain unchanged.**

1-2-38-0405

Authorized
Representative

Date

**EXHIBIT C**

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

**EXHIBIT C**

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

**EXHIBIT C**

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

© ISO Properties, Inc., 2000

**EXHIBIT C**

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    © ISO Properties, Inc., 2000    CG 00 01 10 01    □

**EXHIBIT C**

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III – Limits Of Insurance**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III – Limits Of Insurance**.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance** ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

**EXHIBIT C**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000    CG 00 01 10 01    □

**EXHIBIT C**

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**EXHIBIT C**

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

© ISO Properties, Inc.,  2000          CG 00 01 10 01        □

**EXHIBIT C**

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

         **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

         **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

         **(a)** Owned, occupied or used by,

         **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**EXHIBIT C**

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000

**EXHIBIT C**

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

© ISO Properties, Inc., 2000

**EXHIBIT C**

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

    © ISO Properties, Inc., 2000    CG 00 01 10 01    ☐

**EXHIBIT C**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in **a.** above;

(2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**EXHIBIT C**

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

**EXHIBIT C**

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

  a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

  For the purposes of this insurance, electronic data is not tangible property.

  As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

  a. Means:

    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You;

      (b) Others trading under your name; or

      (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

© ISO Properties, Inc., 2000

**EXHIBIT C**

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000
**CG 00 01 10 01**     □

**EXHIBIT C**

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

© ISO Properties, Inc., 2002

**EXHIBIT C**

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 20 10 10 01

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Name of Person or Organization:**<br>ALLIED TRAILERS SALES & RENTALS<br>P.O. BOX 427<br>SAVAGE, MD 20763-0427 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

B. With respect to the insurance afforded to these additional insureds, the following exclusion is added:

   **2. Exclusions**

   This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2000
**EXHIBIT C**

COMMERCIAL GENERAL LIABILITY
CG 21 39 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINI-TIONS Section is replaced by the following:

"Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement.

CG 21 39 10 93            Copyright, Insurance Services Office, Inc., 1992            Page 1 of 1            □

**EXHIBIT C**

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**EXHIBIT C**

COMMERCIAL GENERAL LIABILITY
CG 21 75 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **a.** Physical injury that involves a substantial risk of death; or

   **b.** Protracted and obvious physical disfigurement; or

   **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   **a.** The act resulted in aggregate losses in excess of $5 million; and

© ISO Properties, Inc., 2002

**EXHIBIT C**

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

© ISO Properties, Inc., 2002

CG 21 75 12 02     □

**EXHIBIT C**

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

**EXHIBIT C**