IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WELLINGTON SPECIALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>D E ENTERPRISES, L.L.C.; J. MICHAEL SHEFFIELD; CASCADES DEVELOPMENT GROUP, L.L.C.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.: 2:08-CV-00115-WKW-WC<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Comes now the plaintiff Wellington Specialty Insurance Company ("Wellington Specialty") and submits this brief in support of its Motion for Summary Judgment.

## *I. FACTS*

### A. UNDERLYING LAWSUIT

1.    J. Michael Sheffield filed a complaint against Cascades Development Group, L.L.C. ("Cascades") that he amended to include D E Enterprises, L.L.C. ("D E Enterprises") as a defendant on or about October 3, 2006. The complaint and amended complaint, styled J. Michael Sheffield v. Cascades Development Group, L.L.C. and D E Enterprises, L.L.C., were filed in the Circuit Court of Montgomery

County, Alabama, and numbered CV 2006-1158 ("Underlying Lawsuit"). (Complaint and Amended Complaint submitted and attached to motion collectively as Exhibit A).

2.    The Underlying Lawsuit is based on the sale of real property by Cascades and D E Enterprises to Mr. Sheffield. (Complaint at ¶ 6-7; Amended Complaint at ¶ 3).[1]  Specifically, Mr. Sheffield claims that on July 9, 2005, he signed the "final draft of the real estate purchase agreement" for the subject property. (Complaint at ¶ 10).  The underlying plaintiff contends that he sent the agreement, along with a down payment, on July 12, 2005, to the underlying defendants' agent; but on July 13, he "received a telephone call from Defendants or Defendants' agent stating that, contrary to the terms of the agreement, the escrow of the down payment would be held by the Defendants rather than its agent." (Complaint at ¶ 10). Despite accepting the down payment, according to Mr. Sheffield, Cascades and D E Enterprises breached the real estate purchase agreement and "have refused to close the transaction and have notified Plaintiff that they consider the contract to be null, void and of no legal effect." (Complaint at ¶ 11).

3.    Based on these allegations, Plaintiff Sheffield asserts three causes of action against D E Enterprises: (1) breach of contract; (2) negligence; and (3)

---

[1]The amended complaint at ¶ 3 adopts and incorporates by reference all the allegations and counts from the original complaint but contains no new or additional material assertions or claims.

wantonness. (Complaint at ¶ 14-20). There is no specific factual assertion upon which the negligence or wantonness claims are based; rather, for both causes, the underlying plaintiff "realleges" the same allegations on which the breach of contract claim also is based, and just asserts in a conclusory fashion that the defendants "negligently" and "wantonly" injured him. (Complaint at ¶ 17 and 19).

4.      The underlying plaintiff claims that he suffered the following damages: (1) lost money; (2) lost use of money; (3) lost use of real estate; and (4) mental anguish and distress. (Complaint at ¶ 16, 18 and 20). The plaintiff also claims punitive damages. (Complaint at Relief Paragraphs).

5.      Wellington Specialty currently is providing a legal defense, under a reservation of rights, for D E Enterprises in the Underlying Lawsuit.

6.      Plaintiff Sheffield was deposed in the Underlying Lawsuit on January 24, 2008. At no point in the deposition did Mr. Sheffield testify about any type of independent duty purportedly owed to him or breached by D E Enterprises as grounds for his claims in the Underlying Lawsuit. Instead, consistent with his assertions in the complaint, the underlying plaintiff's testimony concerning the basis for his claims against D.E. Enterprises focused exclusively on an alleged breach of contract:

Q.      What did Cascades or D.E. Enterprises or Tim Evans do to treat you unfairly?

3

A.    They did not honor a good contract, a valid and binding contract.

(Sheffield Deposition (excerpts submitted and attached to motion as Exhibit B) at 220).

Q.    ... You are asking for punitive damages against Cascades and D.E. How come you want to punish them?

A.    I feel like they willfully backed out of a good contract and there should be damages for that.

(Sheffield Depo. at 215).

Q.    I'm just asking you what facts -- I know this is legal talk. I'm asking you for street talk and layman's talk about what you're saying it is that somebody did wrong. Who is it? Who did wrong?

A.    I would say if I had a contract and they decided not to honor it somebody made a decision.

(Sheffield Depo. at 212).[2]

## B. INSURANCE POLICY

8.    Wellington Specialty issued a Commercial General Liability Policy ("the Policy") to D E Enterprises. (Policy submitted and attached as Exhibit C). The policy period was from June 26, 2005 to June 26, 2006.

9.    The insuring agreement of the Policy provides as follows:

---

[2]Wellington Specialty is not admitting or conceding the truth of any of Mr. Sheffield's allegations in his deposition or complaint.

4

### Section I - Coverages

*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

1.  *Insuring Agreement.*

    a.  *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . .*

    b.  *This insurance applies to "bodily injury" and "property damage" only if:*

        (1)  *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory" and*

        (2)  *The "bodily injury" or "property damage" occurs during the policy period.*

***

### Section V - Definitions

***

13.  *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

10.  The Policy also provided the following pertinent exclusions:

*This insurance does not apply to:*

**a.    Expected or Intended Injury**

5

*"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . . .*

**b.**   **Contractual Liability**

*"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement . . . .*

## II. SUMMARY OF ARGUMENT

In comparing Mr. Sheffield's claims with the Policy, Wellington Specialty owes no defense or indemnity coverage to D E Enterprises in the Underlying Lawsuit. Although Mr. Sheffield's complaint uses tort "buzz words" in designating certain causes of action, the factual allegations from the complaint and Mr. Sheffield's deposition testimony demonstrate that the gravamen of the Underlying Lawsuit is an alleged breach of contract concerning the purported sale of property. As such, Mr. Sheffield's claims are not based on an "occurrence." Further, coverage is barred by the "contractual liability" exclusion. In addition, due to the circumstances of this case, Wellington Specialty submits that it is appropriate for this Court to declare, as a matter of law, that the insurance carrier owes no duty to defend and no duty to indemnify the Underlying Lawsuit.

6

### III. ARGUMENT

## NO COVERAGE EXISTS FOR THE UNDERLYING CLAIMS

### A.    Breach of Contract

Count One of the complaint asserts that D E Enterprises breached the contract regarding the sale of the subject property. This claim is not founded on an "occurrence" under the terms of the Policy.[3] As referenced above, the Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Courts in Alabama have consistently ruled that claims for contractual liability do not fall within this definition. See Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557, 1563-64 (M.D. Ala. 1996); Auto-Owners Ins. Co. v. Brewster, No. CV 94-H-576-S (N.D. Ala. June 1, 1995) (copy attached); Reliance Ins. Co. v. Wyatt, 540 So. 2d 688, 690-91 (Ala. 1988).

In Reliance Ins. Co. v. Wyatt, the underlying claimant asserted that the insured breached a contract by failing to include the claimant as an additional insured under an insurance policy. 540 So. 2d at 689. In its declaratory judgment action, the insurance carrier argued that "there is no coverage, because ... the claim against Wyatt

---

[3]D E Enterprises bears the burden of establishing that the underlying plaintiff's claims assert an "occurrence" and damages covered within the insuring agreement of the Policy. See Shalimar Contractors, Inc. v. American States Ins. Co., 975 F.Supp. 1450, 1454 (M.D. Ala. 1997); Colonial Life & Acc. Ins. Co. v. Collins, 280 Ala. 373, 376, 194 So.2d 532, 535 (1967). The burden of proof with regard to any exclusion rests with Wellington Specialty.

7

is based on breach of contract, not an 'occurrence' resulting in bodily injury or property damage, and because ... Reliance did not undertake to insure Wyatt against breach of contract." Id. In reversing the trial court's judgment for the insured, the Alabama Supreme Court agreed with the insurer and concluded that the breach did not constitute an "occurrence" (which was defined similarly to the Wellington Specialty Policy) that resulted in bodily injury or property damage. Id. at 691.

Judge Hancock in Auto-Owners Ins. Co. v. Brewster, No. CV 94-H-576-S (N.D. Ala. June 1, 1995), relied upon Reliance in ruling that the breach of a contract is not an "occurrence." The underlying plaintiff in Brewster sued based on deficiencies in a construction project. The plaintiff asserted the following claims against one of the contractors: breach of implied warranties; breach of express warranties; negligence; negligence in failing to comply with the terms and warranties of the construction contract; and negligent construction, supervision, inspection and compliance with building codes. Brewster at p. 4. Auto-Owners, the contractor's liability insurance carrier, filed a declaratory judgment action based on this underlying lawsuit. Id. at p.1. Auto-Owners moved for summary judgment on the duty to defend and indemnify the contractor in that underlying action. Id. at p. 5. The insurer argued that the CGL policy (which contained the same definition of "occurrence" as the Policy issued to D E Enterprises) did not provide coverage "for

8

actions against the insured ... as a result of a breach of contract action ... by a third party because such a contract action is not an 'occurrence' as provided for and defined in [the] insurance contract." Id.  Judge Hancock granted Auto-Owners' motion for summary judgment on this issue and ruled that it is clear "that [the contractor's] alleged breach of contract with [the plaintiff] is not an 'occurrence' as contemplated by the policy of insurance issued by Auto-Owners to [the contractor]." Id. at 8 (citing Reliance).  **"[T]he court is satisfied that an alleged breach of contract ... is not an 'occurrence' as defined by the policy.  Such a potential breach is not an accident or a continuous or repeated exposure to substantially the same general harmful conditions."**  Id. at 7 (emphasis added).

In Auto-Owners Ins. Co. v. Toole, Judge Thompson held that the breach of contract claim at issue in that case was not an "occurrence."  947 F.Supp. at 1564. In that declaratory judgment action, the underlying lawsuit involved contractual liability claims arising out the sale and financing of an automobile.  Id. at 1560. Although he declined to adopt a general rule that all claims sounding in contract are not "occurrences," Judge Thompson made clear that contract claims arising out of a business dispute, even in the context of a consumer contractual transaction, are not the types of claims liability insurance policies are designed to cover.

9

> [T]his court would distort the purpose of the liability
> insurance policies in this case by applying to the consumer
> transactions underlying the [contractual liability] claims in
> counts ten and eleven against Toole. It is apparent from a
> reading of the policies ... that they were not intended to
> cover business transactions and business ventures, of a
> consumer nature or of another kind. To allow coverage
> would have the effect of transforming Auto-Owners into "a
> sort of silent business partner" to the consumer transactions
> between the state plaintiffs and Toole. This would be
> improper because "[t]he expansion of the scope of the
> insurer's liability would be enormous without
> corresponding compensation. There is simply no reason to
> expect that such a liability would be covered under a
> comprehensive liability policy which has, as its genesis, the
> purpose of protecting an individual or entity from liability
> for essentially accidental injury to another individual, or
> property damage to another's possessions."

Id. (citations omitted).

Like the contract claims in the aforementioned cases, the alleged breach of the

real estate purchase agreement involving Mr. Sheffield is not an "occurrence." Since

an "occurrence" is foundational to the insuring agreement of the policy, Wellington

Specialty owes neither defense nor indemnity coverage for this claim.

The Policy's contractual liability exclusion (exclusion (b)) also bars coverage

for the underlying plaintiff's contract claim. That exclusion precludes coverage for

"'[b]odily injury" or 'property damage' for which the insured is obligated to pay

damages by reason of the assumption of liability in a contract or agreement." In

10

American National Prop. and Cas. Co. v. Blocker, 165 F.Supp.2d 1288 (S.D. Ala. 2001), the court applied this type of an exclusion in a homeowner's policy to preclude coverage for an underlying contract claim arising out of the sale of residential property. 165 F.Supp.2d at 1298-99. In granting summary judgment for the insurer and declaring it had no duty to defend or indemnify, the court determined that no duty existed between the property sellers and property buyers absent the contract so the contractual liability exclusion excluded coverage for the contract claim. Id. Like the sellers / insureds in American National, D E Enterprises is liable to Mr. Sheffield only because and in light of the parties' alleged contractual relationship; thus, any liability for D E Enterprises was assumed by virtue of the alleged sales contract and thereby barred from coverage.

The Alabama Supreme Court's decision in Ajdarodini v. State Auto Mut. Ins. Co., 628 So. 2d 312 (Ala. 1993), further supports the conclusion that there is no coverage for Mr. Sheffield's breach of contract claim. Dealing with defense and indemnity issues arising from an underlying claim for the breach of a construction contract, the court quoted the policy's definition of "occurrence" and contractual liability exclusion (both of which are similar to those found in the subject Policy). 628 So. 2d at 313. In a succinct analysis of the contract claim, the court held that

11

"[f]rom the plain language of the policy, it is clear that the [underlying plaintiffs']

breach of contract claims were not eligible for coverage under the policy."[4]

As with the underlying contract claims addressed in all of the aforementioned

decisions, Plaintiff Sheffield's breach of contract cause of action affords no coverage

for D E Enterprises under the subject Policy.


**B.    Negligence and Wantonness**

Plaintiff Sheffield asserts two other claims against D E Enterprises: negligence

and wantonness. Those claims are based on the same factual allegations as the breach

of contract claim. The counts containing those claims assert no different or additional

factual bases; rather, in both, the underlying plaintiff just realleges all previous

paragraphs in the complaint. (Complaint at ¶ 17 and 19). Not only is the complaint

devoid of specific facts supportive of negligence or wantonness, the plaintiff's

contentions in ¶ 11 and 13 of the complaint directly contradict any alleged negligence

or wantonness by D E Enterprises. Paragraph 11 contends simply that D E

---

[4]Although not specifically addressed in an Alabama appellate court decision, the "expected or intended injury" exclusion also bars coverage for the contract claim. Based on the allegations in the Underlying Lawsuit, D E Enterprises expected or intended to injure Mr. Sheffield by allegedly refusing to honor the real estate purchase agreement. See Butler & Binion v. Hartford Lloyd's Ins. Co., 957 S.W. 2d 566, 568-69 (Tex. Ct. App. 1995) (no coverage for underlying action claiming breach of contract, among other claims, because not only was there no "occurrence" but this exclusion operated to bar coverage).

Enterprises, along with the other defendant, accepted the plaintiff's down payment on the contract and "have refused to close the transaction and have notified Plaintiff that they consider the contract to be null, void, and of no legal effect." (Complaint at ¶ 11).   Paragraph 13 specifically avers that the defendants "consciously or deliberately engaged in oppression, fraud, wantonness or malice." (Complaint at ¶ 13).   These paragraphs allege deliberate misconduct not accidents.

Moreover, Mr. Sheffield's deposition contains no testimony supportive of negligence or wantonness on the part of D E Enterprises. When given opportunities to elaborate on the grounds for his claims against the defendants, the underlying plaintiff consistently testified that he is suing only because of the alleged failure to honor the sales contract.

    Q.    What did Cascades or D.E. Enterprises or Tim Evans do to treat you unfairly?

    A.    They did not honor a good contract, a valid and binding contract.

(Sheffield Deposition at 220).

    Q.    ... You are asking for punitive damages against Cascades and D.E. How come you want to punish them?

    A.    I feel like they willfully backed out of a good contract and there should be damages for that.

(Sheffield Depo. at 215).

13

Q.    I'm just asking you what facts -- I know this is legal talk. I'm asking you for street talk and layman's talk about what you're saying it is that somebody did wrong. Who is it? Who did wrong?

A.    I would say if I had a contract and they decided not to honor it somebody made a decision.

(Sheffield Depo. at 212).

Based on the complaint and the deposition, Wellington Specialty owes no coverage obligation for the negligence and wantonness claims. Those claims invoke conclusory "buzz words" but create no separate basis for defense or indemnity from Wellington Specialty. See Amerisure Ins. Co. v. Gold Coast Marine Distributors, 771 So. 2d 579, 582 (Fla. Ct. App. 2000) ("The 'buzz words' used by [the underlying plaintiffs] ... are merely conclusory" and no coverage obligation is owed since the complaints as amended did not "allege underlying facts to create a duty to defend."). The gravamen of the Underlying Lawsuit simply is the alleged breach of a contract.

The underlying plaintiff in Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So. 2d 1006 (Ala. 2005), also invoked negligence and wantonness that the insured argued triggered liability coverage. The Alabama Supreme Court disagreed and ruled the carrier owed no duty to defend. In Hartford, the underlying action involved claims for conversion; detinue; and negligence, willfulness and wantonness arising from a security interest dispute. 928 So. 2d at 1007. The court addressed the

14

definition of "occurrence" (that was identical to the definition in Wellington Specialty's Policy) and found that the term "accident" as used in that definition means: "'[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated'"; or "'something unforeseen, unexpected, or unusual.'" Id. at 1011 (citations omitted). Analysis of the underlying complaint's averments in light of this definition led the court to conclude that there was nothing "'unintended or unforeseen' so as to constitute an occurrence under the policy." Id. at 1012. Further, the negligence count was "framed by the factual allegations" in a prior paragraph in the complaint and "merely dangles as a cause of action that is unrelated to any asserted facts." Id. The court also analyzed key testimony related to the underlying claims and found that "[b]y any reasonable standard, these facts show a series of purposeful and deliberate acts that do not and cannot be described as an accident." Id. at 1013.

Similarly, Plaintiff Sheffield's complaint contains no factual averment that D E Enterprises did anything "unintended or unforeseen." Instead, D E Enterprises allegedly has "refused" to proceed with the transaction and "consider[s] the contract to be null, void and of no effect." There is nothing accidental about refusing to proceed with the subject sale and concluding the contract was null and void. The alleged act of refusal by D E Enterprises clearly involved a conscious decision - not

15

an accident. See Black's Law Dictionary 1307 (8th ed. 2004) (defining "refusal" as "the denial or rejection of something offered or demanded"). The complaint confirms as much with its allegation that D E Enterprises "consciously or deliberately" engaged in bad conduct. (Complaint at ¶ 13). Therefore, the plaintiff's charges of negligence and wantonness, like the plaintiff's charges in Hartford, merely "dangle" and do not create coverage.[5]

In addition, Plaintiff Sheffield did not testify in his deposition that D E Enterprises did anything accidental. His unequivocal testimony was that the defendant simply decided not to honor the sales contract. A decision not to abide by a contract is not something "unintended or unforeseen." As such, despite the negligence and wantonness labels, there is no foundational "occurrence" alleged either in the complaint or by the plaintiff's own testimony.

Put simply, the claims in the complaint and the testimony from the Underlying Lawsuit do not trigger coverage under the subject Policy; therefore, Wellington

---

[5]Furthermore, the breach of contract claims on one hand and the tort claims on the other clearly are based on the same underlying facts. Such factual allegations are not severable for coverage purposes and in that circumstance, Wellington Specialty owes no defense obligation for the "unintentional claims." See State Auto Prop. and Cas. Ins. Co. v. Calhoun, No. 2:05-CV-122-F, 2005 WL 2406055 *6 (M.D. Ala. Sept. 29, 2005) ("[T]he negligence claims are based on the same underlying facts as the claims for intentional conduct, and therefore are not severable. Thus, [the carrier] has no obligation to defend [the insured] on the negligence claims.").

Specialty is entitled to summary judgment and a declaration that it owes neither defense nor indemnity coverage to D E Enterprises under the subject Policy.[6]

## C.    No Indemnity Coverage

Wellington Specialty is aware that several of the cases cited above, and others, determined that the duty to indemnify does not become ripe for adjudication unless the trial in the underlying case results in a judgment against the insured.[7]  See State Auto, 2005 WL 2406055 *6-7; Hartford, 928 So. 2d at 1013.  However, the plaintiff submits that the indemnification issue is ripe now in this case and the court should determine that Wellington Specialty does not and cannot owe any indemnification coverage to D E Enterprises.

---

[6]Since there is no coverage for the causes of action in the Underlying Lawsuit, analysis of the damages claimed is not necessary.  Nevertheless, with regard to the damages asserted by the underlying plaintiff, his alleged lost money and lost use of money (i.e., the loss of an investment) do not amount to "property damage" under the Policy.  See American States Ins. Co. v. Martin, 662 So. 2d 245, 248-49 (Ala. 1995).  Coverage for Mr. Sheffield's alleged lost use of property is barred by the "property damage" exclusions (j) and (m) from the Policy.  The claim for punitive damages is barred by the "punitive or exemplary damages exclusion."  That leaves only the underlying plaintiff's alleged mental anguish that may be considered "bodily injury" under the Policy.  However, D E Enterprises bears the burden of proof to show that any potential jury award against it included damages for mental anguish and the specific amount of such an award.  See Shalimar Contractors, Inc. v. American States Ins. Co., 975 F.Supp. 1450, 1454 (M.D. Ala. 1997).

[7]Other cases appear to hold that the duty to indemnify can be handled before adjudication of the underlying matter.  See Judge Hancock's opinion in Auto-Owners;  Hooper v. Allstate Ins. Co., 571 So. 2d 1001, 1003 (Ala. 1990).

First, in its answer and counterclaim, D E Enterprises does not assert that the indemnification issue is unripe. Instead, it admits Wellington Specialty's contention in ¶ 14 of the Complaint that there is a "controversy which requires the court to declare the rights, remedies, obligations and liabilities of the parties under the Policy," and it does not suggest that consideration of the indemnity question should be stayed or delayed. The counterclaim avers, like Wellington Specialty's complaint, that federal diversity jurisdiction exists because, among other things, the amount of controversy includes calculation of Plaintiff Sheffield's claim for damages. (Counterclaim at ¶ 4).

Second, the actions in question in the underlying lawsuit occurred in the summer of 2005. Thus, the two year statute of limitations has expired on any additional tort claims against D E Enterprises that the plaintiff may attempt to add in that action. (Complaint at ¶ 6-10).

Finally, with the clear deposition testimony from Mr. Sheffield concerning the basis for his lawsuit against D E Enterprises (i.e., the defendant allegedly failed to honor the sales contract), and the specific allegations in the complaint (i.e., D E Enterprises has refused to abide by the contract and such decision was conscious and deliberate), the issue for trial in the Underlying Lawsuit will be exactly that - did D E Enterprises violate a contract? Even if it did, there is no indemnity coverage. Since

there can be no coverage for any potential verdict, the question of indemnity can be decided now in this action.

## III. CONCLUSION

Based on the accompanying Motion for Summary Judgment, and in light of the above, Wellington Specialty submits that it is entitled to summary judgment in this matter, and a declaration that, as a matter of law, it owes no duty to defend or indemnify D E Enterprises in the underlying lawsuit.

Respectfully submitted on March 24, 2008,

s/ *Mark M. Hogewood*

Mark M. Hogewood (ASB-7651-E36M)
E-mail: mh@wallacejordan.com

Attorney for Plaintiff Wellington Specialty Insurance Company

**Of Counsel:**
Wallace, Jordan, Ratliff & Brandt, L.L.C.
Post Office Box 530910
Birmingham, Alabama 35253
Voice:      (205) 870-0555
Fax:        (205) 871-7534

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WELLINGTON SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2:08-CV-00115-WKW-WC |
| D E ENTERPRISES, L.L.C.; J. MICHAEL SHEFFIELD; CASCADES DEVELOPMENT GROUP, L.L.C., | ) ) ) ) | |
| Defendants. | ) | |

**Certificate of Service**

I certify that on March 24, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark Allen Treadwell, III, Esq.
Oliver & Treadwell, LLP
129 West Columbus Street
Dadeville, AL 36853
markallen@olivertreadwell.com

Michael S. Harper, Esq.
P.O. Box 780608
Tallassee, AL 36078
mikeharper@elmore.rr.com

Respectfully submitted,

*s/ Mark M. Hogewood*
Mark M. Hogewood
Wallace, Jordan, Ratliff & Brandt, L.L.C.
Post Office Box 530910
Birmingham, Alabama 35253
Voice:      (205) 870-0555
Fax:         (205) 871-7534
E-mail:  mh@wallacejordan.com

20

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AUTO-OWNERS INSURANCE COMPANY,    )

    PLAINTIFF,    )

VS.    )    CV94-H-376-S

CASEY F. BREWSTER,    )
SOUTHERN NEUROSURGICAL
ASSOCIATES PENSION RETIREMENT    )
PLAN; J. CLAYTON DAVIS, AS
TRUSTEE OF SOUTHERN NEURO-    )
SURGICAL ASSOCIATES, PA MONEY
PURCHASE PENSION PLAN;    )

    DEFENDANTS.    )

**ENTERED**

Jun - 1 1995

## FINAL ORDER GRANTING AND DENYING
## CROSS MOTIONS FOR SUMMARY JUDGMENT

In accordance with the memorandum of decision this day
entered, it is ORDERED, ADJUDGED, DECREED and DECLARED that the
motion for summary judgment filed by plaintiff Auto-Owners
Insurance Company is GRANTED and that plaintiff Auto-Owners
Insurance Company has no duty under its Tailored Protection
Policy number 924617 38164410 issued to Carey F. Brewster for the
policy period November 15, 1992 to November 15, 1993 to defend or
indemnify defendant Carey F. Brewster with regard to the
underlying lawsuit filed in Walton County, Florida against Carey
F. Brewster and other defendants by Southern Neurosurgical
Associates Pension Retirement Plan and J. Clayton Davis, as
Trustee of Southern Neurosurgical Associates, PA Money Purchase
Pension Plan. Judgment in plaintiff's favor is ENTERED. It is
further ORDERED, ADJUDGED, DECREED and DECLARED that the motion
for summary judgment filed by defendant Carey F. Brewster is
OVERRULED. Costs are taxed against defendant Brewster.

DONE this ___1ˢᵗ___ day of June, 1995.

UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AUTO-OWNERS INSURANCE COMPANY,    )

    PLAINTIFF,    )

VS.    )    CV94-B-576-S

CAREY F. BREWSTER,    )
SOUTHERN NEUROSURGICAL
ASSOCIATES PENSION RETIREMENT    )
PLAN; J. CLAYTON DAVIS, AS
TRUSTEE OF SOUTHERN NEURO-    )
SURGICAL ASSOCIATES, PA MONEY
PURCHASE PENSION PLAN;    )

    DEFENDANTS.    )

**ENTERED**

**JAN - 1 1995**

MEMORANDUM OF DECISION

The court has before it the April 4, 1995 motion for summary
judgment filed by plaintiff Auto-Owners Insurance Company ("Auto-
Owners"). Pursuant to the court's April 5, 1995 order, that
motion was deemed submitted for decision, without oral argument,
as of May 3, 1995. The court also has before it the April 27,
1995 motion for summary judgment filed by defendant Carey F.
Brewster, and pursuant to the court's April 28, 1995 order, that
motion was deemed submitted for decision without oral argument as
of May 30, 1995.

Plaintiff filed its complaint in this action on March 9,
1994 seeking a declaration with regard to its duty pursuant to a
contract of insurance issued to defendant Carey F. Brewster to
defend and/or indemnify defendant Brewster who is a defendant in
an underlying lawsuit in the Circuit Court of Walton County,
Florida.





IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AUTO-OWNERS INSURANCE COMPANY, )

    PLAINTIFF, )

VS. )        CV94-H-576-S

CAREY F. BREWSTER, )
SOUTHERN NEUROSURGICAL
ASSOCIATES PENSION RETIREMENT )
PLAN; J. CLAYTON DAVIS, AS
TRUSTEE OF SOUTHERN NEURO- )
SURGICAL ASSOCIATES, PA MONEY
PURCHASE PENSION PLAN; )

    DEFENDANTS. )

**ENTERED**

JUN - 1 1995

## MEMORANDUM OF DECISION

The court has before it the April 4, 1995 motion for summary judgment filed by plaintiff Auto-Owners Insurance Company ("Auto-Owners"). Pursuant to the court's April 5, 1995 order, that motion was deemed submitted for decision, without oral argument, as of May 3, 1995. The court also has before it the April 27, 1995 motion for summary judgment filed by defendant Carey F. Brewster, and pursuant to the court's April 28, 1995 order, that motion was deemed submitted for decision without oral argument as of May 30, 1995.

Plaintiff filed its complaint in this action on March 9, 1994 seeking a declaration with regard to its duty pursuant to a contract of insurance issued to defendant Carey F. Brewster to defend and/or indemnify defendant Brewster who is a defendant in an underlying lawsuit in the Circuit Court of Walton County, Florida.

In support of its motion for summary judgment, plaintiff
Auto-Owners has submitted a memorandum of law and filed a
certified copy of the policy of insurance issued to defendant
Carey F. Brewster.  In opposition to defendant Brewster's motion
for summary judgment, Auto-Owners has filed the affidavits of
Janie Parsons and Al Corcoran, Jr..  Auto-Owners has also
submitted a brief in opposition to Brewster's motion.  Defendants
have filed no evidence nor submitted any brief in opposition to
plaintiff's motion.[1]  Brewster, in support of his motion has
filed the affidavit of Carey F. Brewster and the Alabama Supreme
Court opinion in Brown Machine Works & Supply Company, Inc. v.
Insurance Company of North America.  Defendant Brewster has filed
no brief in support of his motion.

Under Federal Rule of Civil Procedure 56(e), summary
judgment is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317,
322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The party
moving for summary judgment always bears the initial
responsibility of informing the court of the basis for its
motion, and identifying those portions of the pleadings,

---

[1] Although defendants have submitted no brief nor filed any
evidence in opposition to plaintiff's motion, the main thrust of
Brewster's motion is that Auto-Owners is essentially estopped
from asserting various exclusions in denying a defense and
coverage to Brewster in the underlying suit.  The court will
address Brewster's argument in its motion for summary judgment as
if it has been presented in opposition to plaintiff's motion for
summary judgment.

2

depositions, answers to interrogatories and admissions on file together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322-23; *see* Fed. R. Civ. P. 56(a) and (b).

Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249.

3

The following facts in this case are undisputed: defendant Carey F. Brewster is a subcontractor who in November 1992 contracted with the general contractor of defendants Southern Neurosurgical Associates Pension Retirement Plan and J. Clayton Davis, as Trustee of Southern Neurosurgical Associates, P.A. Money Purchase Pension Plan (the court will refer to these two defendants collectively as "Southern Neurosurgical") to perform construction in Walton County, Florida. Auto-Owners issued a "Tailored Protection Policy" to defendant Brewster with an effective coverage date from November 15, 1993 to November 15, 1993. See Insurance Policy.

On October 29, 1993, Southern Neurosurgical filed a complaint in the Circuit Court of Walton County, Florida against numerous defendants involved in the construction project for Southern Neurosurgical. Defendant Brewster is one of the defendants in the underlying suit in the Circuit Court of Walton County, Florida, and the following claims are asserted against defendant Brewster in the underlying suit: Count II - Breach of Implied Warranties; Count IV - Breach of Express Warranties; Count VI - Negligence; and Count VIII - Negligence in failing to comply with the terms and warranties of the construction contract.[ ] Plaintiff Auto-Owners Insurance Company is providing

_____

 · Counts VI is stated in terms of negligent construction, supervision, inspection, and compliance with building codes. This count can only arise out of any alleged breach of contract, and the court views this count as one for breach of contract. Count VIII of the complaint in the underlying suit charges negligence in compliance with the "construction contract". This count is addressing the construction contract between Southern Neurosurgical and the general contractor. However, the complaint in the underlying suit states that Brewster in contracting with the general contractor agreed to the terms of the construction

4

a defense to defendant Brewster in the underlying suit with a reservation of right.

As a basis for its motion for summary judgment, Auto-Owners argues that it is not obligated to provide a defense or to indemnify defendant Brewster because the insurance policy issued by Auto-Owners to Brewster does not provide coverage for contractual liability claims. Auto-Owners' contention rests upon two grounds: First, Auto-Owners argues that the insurance policy issued to defendant Brewster was not intended and does not provide coverage for actions against the insured (Brewster) as a result of a breach of contract action against Brewster by a third party because such a contract action is not an "occurrence" as provided for and defined in Brewster's insurance contract with Auto-Owners. Auto-Owners also points to various exclusions in the insurance policy in support of its argument that plaintiff is not obligated to defend or indemnify Brewster in the underlying suit.

The "Commercial General Liability Coverage Form" which is a part of the overall Tailored Protection Insurance Policy issued by Auto-Owners to Brewster provides the following:

Section I - Coverages

Coverage A. Bodily Injury and Property Damage Liability

1. Insuring agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance

---

contract between Southern Neurosurgical and the general contractor. The court likewise views this claim of negligently failing to comply with the terms of the contract as one for breach of contract.

5

> applies. We will have the right and duty to defend any
> "suit" seeking those damages. We may at our discretion
> investigate any "occurrence" and settle any claim or "suit"
> that may result.
> ...
>
>     b. This insurance applies to "bodily injury" and
> "property damage" only if:
>         (1) The "bodily injury" or "property damage"
> is caused by an "occurrence" that takes place in the
> "coverage territory"; and
>         (2) The "bodily injury" or "property damage"
> occurs during the policy period.

See Insurance Policy, Commercial General Liability Coverage Form.
p. 1. The Commercial General Liability Coverage Form defines the
term "occurrence" as "an accident, including continuous or
repeated exposure to substantially the same general harmful
conditions." See Insurance Policy, Commercial General Liability
Coverage Form, p. 9. Auto-Owners argues that the policy issued
to defendant Brewster was a general liability policy intended
only to protect the insured, Brewster, for unforeseen accidents
and that the policy is not a "performance" bond insuring Brewster
for his alleged failure to comply with the terms of the contract
or his alleged breach of implied or express warranties. The
court agrees. A simple reading of the provisions of the contract
provides ample insight as to the type of coverage and policy that
plaintiff issued to defendant Brewster. Section A of the "Causes
of Loss - Basic Form" lists that types of loss that the policy is
intended to cover. This list includes occurrences such as fire,
lightning, explosion, windstorm or hail, smoke, aircraft or
vehicles, riot, vandalism, sinkhole, and volcanic action. See
Insurance Policy, Causes of Loss Basic Form, p. 1. Nowhere is
injury for breach of contract mentioned, and breach of contract
is simply not similar to any of the causes of loss listed.

6

Further, the court is satisfied that an alleged breach of
contract or breach of implied or express warranties is not an
"occurrence" as defined by the policy. Such a potential breach
is not an accident or a continuous or repeated exposure to
substantially the same general harmful conditions.

In construing the term "occurrence" in an insurance policy
in which "occurrence" was defined in substantially the same
manner that it is defined in plaintiff's policy with Brewster,
the Alabama Supreme Court held that an alleged breach of contract
did not constitute an "occurrence" as defined in the policy.
Reliance Insurance Company v. Wyatt, 540 So. 2d 688, 691 (Ala.
1989). In Reliance, Gary C. Wyatt, Inc. ("Wyatt") was engaged in
a construction project in Destin, Florida. Wyatt leased a Crane
from Essex Crane Rental ("Essex") for its construction project.
Reliance Insurance Company ("Reliance") had issued a general
liability policy to Wyatt. Upon obtaining the lease, Wyatt
agreed with Essex to include Essex as an additional interest
under the general liability policy with Reliance. Wyatt failed
to do so. An employee of Wyatt was injured in an accident on
Wyatt's construction site involving the crane. The employee sued
Wyatt and Essex. Essex cross-claimed against Wyatt for breach of
contract in failing to include Essex as an interest in Wyatt's
general liability policy with Reliance. Wyatt sought a defense
from Reliance on the cross-claim. Reliance refused on the
grounds that Wyatt's alleged breach of contract with Essex was
not an "occurrence" within the meaning of the policy issued to

7

Wyatt.[1]  Reliance, 540 So. 2d at 688-89.  The Alabama Supreme
Court held that the breach of contract by Wyatt in failing to
include Essex as an interest in its policy with Reliance was not
an "occurrence" as defined by the terms of the policy.  The court
stated that although there was an injury to Wyatt's employee,
this was not the "occurrence" upon which liability was
predicated.  The breach of contract occurred with or without the
employee's injury.  Id. at 690-91.

Although the facts of the case at hand are not altogether
analogous to the facts in Reliance, the court is satisfied with
the Alabama Supreme Court's interpretation of "occurrence" in the
context of the policy issued by Reliance to Wyatt.  Thus, it is
likewise clear that Brewster's alleged breach of contract with
Southern Neurosurgical is not an "occurrence" as contemplated by
the policy of insurance issued by Auto-Owners to Brewster.
Therefore, Auto-Owners' motion for summary judgment is due to be
granted, and a separate order will be entered declaring that
Auto-Owners has no duty to defend or indemnify defendant Carey F.
Brewster in the underlying suit in Walton County, Florida with
regard to any claim in such suit involving an alleged breach of
implied or expressed warranties or other breach of contract

---

[1] The policy issued by Reliance to Wyatt defined
"occurrence" as "an accident including continuous or repeated
exposure to conditions, which results in bodily injury or
property damage neither expected nor intended from the standpoint
of the insured."  Reliance, 540 So. 2d at 689 n. 6.

8

asserted against Carey F. Brewster by Southern Neurosurgical.

Defendant Carey F. Brewster's April 27, 1995 will be overruled.

DONE this _1st_ day of June, 1995

_[signature]_

UNITED STATES DISTRICT JUDGE

---

¹ As indicated by footnote number one, the court has
contemplated defendant Brewster's arguments in support of his
motion for summary judgment as also being in opposition to
plaintiff's motion. Defendant Brewster argues that the recent
Alabama Supreme Court case of Brown Machine Works & Supply
Company, Inc. v. Insurance Company of North America, 1995 WL
138549 (Ala. 1995) stands for the principle that plaintiff Auto-
Owners is effectively estopped from asserting any exclusion
against Brewster because of its alleged failure to deliver a full
and complete copy of the insurance policy to defendant Brewster.
In Brown, the court held that where a statute requires delivery
of a policy to the insured and the insurer fails in such
delivery, the insurer may be estopped from asserting coverage
conditions or exclusions that are in the policy but not disclosed
to the insured. Id. at 6. Because the court has concluded that
Brewster's alleged breaches of contract were not an "occurrence"
as contemplated by the policy, the court need not address the
factual issue as to whether the entire policy was actually
delivered to defendant Brewster or whether Auto-Owners is
estopped from asserting seemingly valid exclusions in the policy.
The policy issued to Brewster by Auto-Owners simply did not cover
the alleged breaches of contract asserted by Southern
Neurosurgical in the underlying suit. Therefore, the court need
not address any exclusions asserted by Auto-Owners or whether
such exclusions can validly be asserted.

9